UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-1402

SUSAN SCANLON

vs.

JEANES HOSPITAL A/K/A TEMPLE UNIVERSITY HEALTH SYSTEM,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 06-cv-02424)
District Court Judge: Honorable Norma L. Shapiro

Submitted Under Third Circuit L.A.R. 34.1(a)
March 9, 2009

Before: FUENTES, CHAGARES and ALDISERT, Circuit Judges

**JUDGMENT**

This cause came to be heard on the record from the Eastern District of Pennsylvania and was submitted pursuant to Third Circuit L.A.R. 34.1(a) on March 9, 2009. On consideration whereof, it is now here

ORDERED and ADJUDGED by this Court that the District Court's judgment of January 23, 2008, be and the same is hereby AFFIRMED. Costs taxed against Appellant. All of the above in accordance with the Opinion of this Court.

ATTEST:

/s/ Marcia M. Waldron
Clerk

DATED: April 1, 2009

Costs added hereto in favor of Appellee, as follows:

   Brief................................................$ 151.56
   **Total................................................$ 151.56**

Certified as a true copy and issued in lieu of a formal mandate on 04/23/2009

Teste: *Marcia M. Waldron*
**Clerk, U.S. Court of Appeals for the Third Circuit**

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-1402

SUSAN SCANLON

vs.

JEANES HOSPITAL A/K/A TEMPLE UNIVERSITY HEALTH SYSTEM,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 06-cv-02424)
District Court Judge: Honorable Norma L. Shapiro

Submitted Under Third Circuit L.A.R. 34.1(a)
March 9, 2009

Before: FUENTES, CHAGARES and ALDISERT, Circuit Judges

(Opinion Filed: April 1, 2009)

**OPINION**

FUENTES, Circuit Judge:

Jeanes Hospital appeals from an adverse jury verdict awarding damages for

terminating Susan Scanlon in violation of the Age Discrimination in Employment Act ("ADEA"). For the following reasons, we will affirm.

### I.

Because we write for the parties, we discuss only the facts relevant to our conclusion. Scanlon began her employment at Jeanes Hospital in 1966, and she became a full-time registered nurse in 1983, specializing in labor and delivery. Her record was unblemished throughout her career at Jeanes Hospital. At the time of her termination, Scanlon was sixty-one years old.

On January 1, 2005, a patient had a miscarriage during Scanlon's shift. The placenta, cord, and fetus were expelled by the patient into the toilet, and these were then retrieved and placed into a formalin bucket by Scanlon and Susan Wacker, an OB tech with two years' experience.

Following this incident, Wacker became concerned that placing the fetus in formalin was a mistake and that she would be blamed.[1] Accordingly, she filed a complaint with Kathleen Haviland, the interim supervisor of the unit, claiming that Scanlon had failed to warn her that the fetus should not have been placed in formalin. She also added that (1) Scanlon had been "bickering" with Chris Morrell, the other nurse on duty, and (2) Scanlon had been uncompassionate toward the patient. No complaint

---

[1] No such prohibitive policy was ever in effect. Jeanes Hospital subsequently clarified its policies to state that it is appropriate to put a miscarried fetus in formalin when it is under 24 weeks. The fetus here was 18 weeks.

2

was filed by the patient or the patient's family.

Haviland received Wacker's complaint on Monday, January 3, 2005. She and Elizabeth Welsh, the clinical director, began investigating the two complaints regarding bickering and inadequate patient care. That same day, Haviland and Welsh concluded that Scanlon and Morrell indeed had been bickering (despite denials by each), and issued them a warning stating that this "behavior is getting in the way of achieving service excellence standards and our core principles." J.A. at 211-12. Initially, Haviland and Welsh asserted that this decision was supported by statements from Dr. Airoldi, the physician on duty, and Dr. Bilyak, the patient's attending physician. But on cross-examination, they admitted that they had not spoken with Dr. Airoldi and Dr. Bilyak until the following day. After recanting, both claimed they had relied instead on a unit clerk, even though the clerk's statement was never documented in writing or otherwise verified in court.

On January 4, 2005, Haviland and Welsh continued with their investigation of the second complaint. They interviewed Wacker, Dr. Airoldi, and Dr. Bilyak; they did not review the patient's chart, or speak with the on-duty supervisor, the patient, or Scanlon herself. Based on these limited conversations, Welsh prepared a Corrective Action Report suggesting that Scanlon's employment be terminated. She also prepared a termination notice stating that Scanlon's "actions did not adhere to the expected Standard of Practice" and that her "behaviors were inconsistent with our Customer Service

3

Expectations, our Service Excellence Standards as well as the [hospital's] Core Principles." Welsh was scheduled for surgery the following day so she passed these documents, as well as responsibility for the investigation, to Denise Frasca, the Chief Nursing Officer.

On January 5, 2005, when Scanlon arrived for her 7 A.M. shift, she was immediately escorted by Haviland to Frasca's office, where she was handed the prepared notice of termination. Scanlon's termination opened up three day shifts per week. At the time, two younger nurses had voiced strong desire to move from the night shift to the day shift, including Kim Coskery, a thirty-year-old nurse who had been hired just a few weeks before.

Scanlon filed suit in federal district court on June 8, 2006. The case proceeded to a jury trial on federal and state claims of age discrimination and a state claim for unpaid wages. On October 1, 2007, the jury awarded back pay of $176,800 and front pay of $40,000, but declined to award liquidated damages. The District Court awarded an additional $40,000 for pain and suffering and added pre-trial interest of $16,566.92 for a total judgment of $273,366.92.

Jeanes Hospital moved for judgment as a matter of law or for a new trial on the grounds that (1) Scanlon failed to establish a prima facie case and (2) the jury's verdict was against the weight of the evidence, as well as various claims of procedural errors including misleading jury instructions, improper closing argument, and erroneous

4

exclusion of documents from evidence. The District Court denied the motion on January 23, 2008. Jeanes Hospital filed a timely notice of appeal.

## II.

The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over the grant or denial of a motion for judgment as a matter of law. Buskirk v. Apollo Metals, 307 F.3d 160, 165 (3d Cir. 2002). The motion should be granted only where, "viewing the evidence in the light most favorable to the non-movant, and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find liability." Gagliardo v. Connaught Labs., Inc., 311 F.3d 565. 568 (3d Cir. 2002) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party, and we must "disregard all evidence favorable to the moving party that the jury is not required to believe" and "give credence to the evidence favoring the nonmovant." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).

## III.

Jeanes Hospital's main contention is that Scanlon failed to produce sufficient evidence that her termination was motivated by age animus. Jeanes Hospital insists that it "had every right to accept the version of the events that was described to them [by Wacker]." Appellant's Reply Br. 6. Moreover, it argues that Scanlon failed to provide

5

any direct evidence of age discrimination, such as inappropriate age remarks or other nurses being treated differently based on age.

A plaintiff may prevail on an ADEA claim either "(1) by presenting direct evidence of discrimination, or (2) by presenting indirect evidence of discrimination that satisfies the familiar three-step framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005) (citations omitted). The burden-shifting framework set forth in McDonnell Douglas requires the plaintiff to bear the initial burden of establishing a prima facie case of discrimination; the defendant to articulate a legitimate, non-discriminatory reason for the employment action; and finally the plaintiff to "show by a preponderance of the evidence that the employer's explanation is pretextual." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

Significantly, a plaintiff who proceeds by presenting *indirect* evidence need not also present *direct* evidence. Reeves, 530 U.S. at 148 ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). Although the Supreme Court left room for exception where "no rational factfinder could conclude that the action was discriminatory," id., this case does not present that situation.

Jeanes Hospital may have been entitled to accept Wacker's version of the events, but the evidence and testimony at trial strongly suggested that this was not what occurred.

Indeed, if Scanlon's termination was genuinely motivated by Wacker's complaint, Jeanes Hospital easily should have been able to pinpoint for the jury the specific conduct which it considered determinative in justifying the termination. It could not. As the District Court repeatedly observed in its opinion—and thus as the jury could have determined for itself—the testimony of Appellant's key supporting witnesses was "evasive" and "incredible."[2]

The termination notice itself contained no specifics as to the cause of termination. App. 317. At a subsequent unemployment benefits hearing, however, Jeanes Hospital elaborated a battery of reasons, including that Scanlon had failed to start an IV to treat heavy bleeding, violated hospital policy by placing the fetus in formalin, refused to offer comfort and support to the patient, failed to complete all procedures with the fetus by the end of her shift, and failed to give a full report to the next shift. App. 292-95; 388-95. Each of these purported reasons was convincingly refuted at trial.

Proving the falsity of these proffered justifications, when combined with a prima facie case, is sufficient to find intentional discrimination. Reeves, 530 U.S. at 147-48 ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of

---

[2] Specifically, the District Court stated that "Haviland's apparent lack of command of the facts and the contradictions in her testimony made her appear incredible"; "Welsh's testimony was evasive and persistent even when contradicted by other evidence"; and "[Wacker] answered questions in a transparently evasive manner, was combative with counsel, and appeared to have a shaky recollection of the facts." Scanlon v. Jeanes Hosp., No. 06-2424, 2008 WL 191169, at *4, 5, 10 (E.D. Pa. Jan. 23, 2008).

7

the explanation that the employer is dissembling to cover up a discriminatory purpose."). Particularly where no reasons were initially given, and all the various reasons given ex post facto have been proven implausible, a reasonable jury could conclude that the true reason was a discriminatory one.

Jeanes Hospital is correct that it is not enough to "simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765. The trouble here, however, is that Jeanes Hospital's investigation was so cursory, and its proffered explanations so flimsy, that the misapprehension suggests more than mere mistake. Scanlon's counsel highlighted countless unexplained omissions in the investigation, any one of which would have readily validated the adequacy of Scanlon's job performance that day. Thus, there was a sufficient basis for the jury to conclude that Jeanes Hospital's proffered reasons were not simply unfounded, but intentionally false.

Alternatively, Jeanes Hospital argues that Scanlon presented an incomplete or weak prima facie case. But as it acknowledges in its brief, "after a case has been tried to a jury on the merits, 'it is unnecessary for the appellate court to decide whether a *prima facie* case had, in fact, been established.'" Bruno v. W.B. Saunders Co., 882 F.2d 760, 764 (3d Cir. 1989) (citation omitted). Nevertheless, we note in passing that (1) Scanlon was sixty-one years old; (2) she was fired; (3) she was qualified for the job from which

8

she was fired; and (4) she showed evidence that she "was replaced by a sufficiently younger person to create an inference of age discrimination," namely Kim Coskery. Fakete v. Aetna, Inc., 308 F.3d 335, 338 n.3 (3d Cir. 2002) (listing elements of a prima facie case in an ADEA suit). The fact that Coskery was an existing employee is not disqualifying, since the promotion of an existing employee can constitute "replacement." And even if she were already in the process of being transitioned to the day shift, Scanlon's termination undoubtedly accelerated that transition.

    We also find no merit in Appellant's remaining arguments, which essentially assert that the jury was misled to believe that age discrimination could be motivated solely by financial reasons, rather than by age. First, Jeanes Hospital claims that opposing counsel's closing argument improperly influenced the jury verdict by repeatedly suggesting that Scanlon's termination was motivated by a desire for cost savings, apart from any connection to age. Moreover, Appellant argues that the curative instruction given by the District Court only exacerbated the problem because it implied that cost savings could in fact serve as a proxy for age and be considered in certain instances. We defer to and agree with the District Court's judgment that its curative instructions were sufficient to expunge any prejudicial impact. Fineman v. Armstrong World Indus., 980 F.2d 171, 207 (3d Cir. 1992).[3]

---

[3] In any event, we also note that the curative instruction was proper under Hazen Paper Corp. v. Biggins, 507 U.S. 604 (1993), as requested by Appellant's trial counsel. Hazen specifically left open the possibility that, in some circumstances, pension status

9

"determinative factor" jury instruction because it specified that, although age must be a

Finally, Jeanes Hospital complains that the District Court erred in its "determinative factor" jury instruction because it specified that, although age must be a determinative factor, it does not have to be the sole factor. This instruction was not in error. See Miller v. CIGNA Corp., 47 F.3d 586, 595-96 (3d Cir. 1995) (concluding that "because of" does not mean "solely because of" and, indeed, holding that a "sole determinative factor" charge could be prejudicial error).

## IV.

Accordingly, we will affirm the District Court's judgment of January 23, 2008, substantially for the reasons set forth in Judge Shapiro's opinion.

---

could be used as a proxy for purposes of age discrimination. Id. at 612-13 ("We do not preclude the possibility that an employer who targets employees with a particular pension status . . . thereby engages in age discrimination. Pension status may be a proxy for age . . . in the sense that the employer may suppose a correlation between the two factors and act accordingly.").

10